IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEANETTE BOSCH o/b/o　　　　　　　　　　　　　　　　CV 06-1563-MA
MICHAEL BOSCH (dec'd),
　　　　　　　　　　　　　　　　　　　　　　　　　OPINION AND ORDER
　　　　　Plaintiff,

　　v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

　　　　　Defendant.

　　**TIM WILBORN**
　　19093 S. Beavercreek Road, PMB # 314
　　Oregon City, OR  97045

　　　　Attorney for Plaintiff

　　**KARIN J. IMMERGUT**
　　United States Attorney
　　**BRITANNIA I. HOBBS**
　　Assistant United States Attorney
　　1000 S.W. Third Avenue, Suite 600
　　Portland, OR  97204-2902
　　(503) 727-1053

　　**RICHARD M. RODRIGUEZ**
　　Special Assistant United States Attorney
　　Social Security Administration
　　701 5th Avenue, Suite 2900 M/S 901
　　Seattle, WA  98104-7075
　　(206) 615-2114

　　　　Attorneys for Defendant

**MARSH, Judge:**


1- OPINION AND ORDER

The matter before the Court is named plaintiff, Jeanette Bosch's, Social Security Complaint, seeking judicial review of a final decision of the Commissioner of Social Security denying her late-husband, Michael Bosch's, application for supplemental security income (SSI) under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-83f.  Michael Bosch died on December 29, 2001, while his application was on administrative appeal.  Thereafter, Jeanette Bosch was substituted as the real party in interest[1]. For the reasons that follow, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

## BACKGROUND

Bosch applied for disability on June 16, 1995, alleging he became disabled October 11, 1994, when he was 41 years old, due primarily to fatigue, which he claimed was caused by "residual effects" of a "brain stem stroke" and side-effects of medications for high-blood pressure and edema (swelling).  He had a high-school education and past work as a gold miner, wood cutter, and general laborer.  However, he last reported earnings in 1983. Between 1983 and October 1994 Bosch reportedly had been working odd jobs and prospecting for gold on Bureau of Land Management (BLM) land.

---

[1] Unless Jeanette Bosch is specified, all references to Bosch refer to the applicant, Michael Bosch.

2- OPINION AND ORDER

Bosch's application was denied twice by an Administrative Law Judge (ALJ), after multiple hearings and a remand from the Appeals Council. On February 7, 2002, after Bosch died, the Appeals Council vacated the second decision and again remanded the matter, this time to a different ALJ. On December 8, 2003, a new hearing was held at which Jeanette Bosch testified, along with a medical expert and a vocational expert. Thereafter, on June 24, 2004, the new ALJ again denied Bosch's application, finding that Plaintiff was not disabled between June 16, 1995 and his death on December 19, 2001 (the period under review) within the meaning of the Social Security Act. This decision became the Commissioner's final decision when the Appeals Council denied Jeanette Bosch's request for review on August 31, 2006.

On appeal to this Court, Jeanette Bosch argues that the ALJ erred by: (1) failing to provide legally sufficient reasons for rejecting the opinion of examining physician Kevin Sullivan that repeated use of Bosch's hands may cause pain and/or parasthesias (sensation of tingling or numbness); (2) failing to provide clear and convincing reasons for finding Bosch less than fully credible; and, (3) improperly rejecting lay witness testimony. I address these claims in the order they arise under the Commissioner's sequential evaluation.

3- OPINION AND ORDER

**STANDARD OF REVIEW**

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the

4- OPINION AND ORDER

Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## **DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one, the ALJ found that Bosch had not engaged in substantial gainful activity since his alleged onset of disability. *See* 20 C.F.R. § 416.920(b).

At step two the ALJ found that Bosch met the definition, under the regulations, of a "severe" impairment, because the combination of the following medically determinable impairments significantly limited Bosch's ability to perform basic work activities: morbid obesity, a history of brain stem stroke in 1994 with associated Wallenberg's syndrome, hypertension, chronic pain, diabetes mellitus, mild bilateral carpel tunnel syndrome, and left leg ataxia (lack of coordination). *See* 20 C.F.R. § 416.904, 416.920(c).

5- OPINION AND ORDER

At step three the ALJ found that Bosch's impairments did not, singularly or in combination, meet or equal the requirements of any listed impairment, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so severe as to automatically constitute a disability.  *See* 20 C.F.R. § 416.920(a)(4)(iii).

The ALJ determined that Bosch had the residual functional capacity (RFC) to work with these restrictions from June 16, 1995 until February 2000: no standing or walking more than one hour at a time and no more than four hours in a work day; no climbing, kneeling, crouching or crawling; no work at heights or around machinery.  *See* 20 C.F.R. §§ 416.920(e), 416.945, 416.967.  After February 2000, Bosch was further limited to work that did not require gripping more than a pencil, and did not require use of a keyboard.

At step four the ALJ found Bosch was no longer able to perform his past relevant work.  *See* 20 C.F.R. § 416.920(a)(4)(iv).

At step five the ALJ found that before February 2000 Bosch could perform other work existing in significant numbers in the national economy, such as assembler of electronic accessories, assembler of small products, rental clerk of a storage facility, and ticket seller.  After February 2000, when Bosch's limitations increased, the ALJ found that someone with Bosch's limitations

6- OPINION AND ORDER

could still perform the jobs of rental clerk of a storage facility and ticket seller. See 20 C.F.R. § 416.920(a)(40(v), 416.920(g). Accordingly, the ALJ found that Bosch was not disabled during the period under review.

## DISCUSSION

**I. Substantial Evidence Supports the ALJ's Clear and Convincing Reasons for Discrediting Many of Bosch's Subjective Reports.**

According to Jeanette Bosch, the ALJ failed to provide clear and convincing reasons for finding Bosch less than fully credible, as required by the law of this circuit. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Morgan v. Apfel*, 169 F.3d 595, 599 (9th Cir. 1999). Jeanette Bosch asserts that many of the medical conclusions upon which the ALJ relied to reject Bosch's testimony were incorrect, and that the ALJ "ignored" many of Bosch's complaints. However, with the exception of Dr. Sullivan's opinion[2], Bosch does not assert a claim or advance any legal argument that the ALJ's assessment of the medical evidence is flawed. Nor does she claim that the ALJ's assessment of Bosch's "severe" impairments or his residual functional capacity was in error. I have thoroughly reviewed the

---

[2] Dr. Sullivan, whose opinion Jeanette Bosch seems to feel is favorable to her, found that Bosch had the capacity to perform medium exertional level work, with additional restrictions.

7- OPINION AND ORDER

record in this case and I find substantial evidence to support the ALJ's uncontroverted assessment of Bosch's medical condition during the period under review, the work-related functional limitations imposed by Bosch's medically determinable impairments, and Bosch's resulting residual functional capacity. Accordingly, I summarily reject Jeanette Bosch's arguments that her husband's testimony should be credited because the ALJ erroneously interpreted the medical evidence. If Ms. Bosch wanted the Court to conduct a more thorough analysis of the medical evidence she should have raised the appropriate claims and allowed the Commissioner to respond to them.

   Turning to the ALJ's principal reason for rejecting Bosch's testimony, he found that most of Bosch's reported problems, including his allegedly disabling fatigue, were not explained by the minor stroke he suffered in 1994, as Bosch claimed, or by any of Bosch's medically determinable impairments. Instead, the ALJ credited the opinion of the testifying medical expert, Jay Goodman, M.D., that Bosch's allegedly severe fatigue was caused by deconditioning, which does not qualify as a medically determinable impairment. Dr. Goodman's testified that the type of stroke Bosch had would not cause weakness of the arms and legs, pain, or paralysis. In addition, Dr. Goodman testified that Bosch's other medical problems, such as hypertension,

8- OPINION AND ORDER

diabetes and edema, would not cause severe fatigue or pain, and in any event these problems were more or less controlled with medication. Although the type of stroke Bosch suffered did likely cause dizziness, inability to swallow, numbness, and one pupil to be larger than the other, the only work-related functional impairment that remained 12 months later (20 C.F.R. § 416.905(a)) was numbness.

Bosch suffered the 1994 stroke because, as a result of his morbid obesity, he was severely hypertensive[3]. His sedentary lifestyle and excessive consumption of food, alcohol and tobacco were also responsible for his type II diabetes, his edema, and the pain associated with all these issues. His doctors advised him to lose weight, exercise, quit smoking, and to not drink alcohol. As the ALJ notes, however, Bosch did not follow any of these recommendations. Instead he gradually gained more weight, became even more sedentary, used increasing amounts of prescription medication and continued to drink in excess and to smoke. When he initially presented to the hospital on October 11, 1994 with elevated liver enzymes which are not associated

---

[3] Bosch's blood pressure upon presenting to the hospital on October 11, 1994 was 190/130 and he was immediately administered an anti-hypertensive in the ER. He had normal head CT scans and a normal brain MRI. However, doctors concluded that Bosch had "probably" suffered a brain stem cerebrovascular accident because of his classic symptoms of severe hypertension, dizziness, and right-side numbness.

9- OPINION AND ORDER

with severe hypertension, Bosch explained that he drank "about a pint of Vodka on a daily basis for the last five or six or seven years." When Bosch presented to the ER two days before he died, on December 27, 2001, he admitted to "frequent, daily alcohol use...up to a pint a day." Indeed, the ALJ noted that Bosch's final cause of death was pancreatitis[4], which is most commonly caused by alcoholism.

The ALJ also found Bosch's claim that he suffered from disabling headaches was not corroborated by the medical evidence. The ALJ noted records such as a June 1996 report that Bosch's headaches following the stroke were "markedly improved" after getting new eyeglasses, and later self-reports that Bosch only had "occasional headaches." Jeanette Bosch's contention that the record shows Bosch underwent fives years of treatment for headaches, including Vicodine and a "twice-daily dose of Empirin with codeine" is not supported by the two chart notes she cites in support of this contention, or by Bosch's own testimony at the last hearing. These records show Bosch was treated for a

---

[4] The ALJ noted a conflict regarding the cause of Bosch's death. He stated that the death certificate lists the cause as "pancreatitis" whereas the hospital's "death summary" states that the cause of death was "respiratory failure and asystole." In fact, this is not a conflict. Respiratory complications are frequent and major contributors to the mortality of pancreatitis. "Asystole" is when the heart stops producing cardiac electrical activity, and is required for a medical practitioner to certify death.

10- OPINION AND ORDER

migraine headache in February 1997 with Demerol and Phenergan administered in the ER (no mention of Empirin on his list of medications), and than again in May 22, 1998 David Candelaria, M.D., prescribed Vicoprofen for "break-through" headaches after Bosch presented complaining of abdominal pain and a "sick liver." Bosch, himself, stated on a social security form dated December 13, 1999 that he was taking Empirin at that time for "chronic pain," not specifically for headaches (he allegedly suffered from chronic pain on the left side of his body and the right side of his face). At the January 12, 2000 hearing, Bosch testified that he took Empirin every twelve hours and that he "only takes Vicodin when he gets a bad headache, about once a month." Accordingly, I find Jeanette Bosch's argument lacks merit.

The final major inconsistency between Bosch's subjective reports and the medical evidence regards his claimed need to urinate multiple times every hour due to a diuretic medication he took for edema. The ALJ noted that at the January 12, 2000 hearing Bosch admitted he actually only took diuretics every other day, and that on days he did not take them he did not have to urinate frequently. The ALJ found only one chart note memorializing Bosch's complaint of this problem, and it corresponded with an increase in the dosage to alleviate increased edema. In any event, the ALJ surmised that either

11- OPINION AND ORDER

Bosch had not taken the medication properly or the dosage of the diuretic could have been adjusted to eliminate limitations caused by frequent urination.  Jeanette Bosch argues that is was "legally inappropriate" for the ALJ to suggest an adjustment to Bosch's medication since the ALJ is not a doctor.  Though I concur with Ms. Bosch that the ALJ's conjecture does not constitute substantial evidence that Bosch was non-compliant, or that his prescription could have been changed, still, the ALJ properly relied on the absence of documentary evidence to support Bosch's claim that frequent urination was a major problem for him as one of several inconsistencies between Bosch's subjective reports and the objective medical evidence.

    The other core reason the ALJ rejected Bosch's testimony was his general lack of credibility as reflected throughout the record.  The ALJ noted that Bosch's credibility had been "called into question at the previous hearings," along with his wife's testimony, which the ALJ discredited (discussed below).  In the March 1997 opinion denying Bosch's application, the ALJ noted that Bosch's lack of reported income since 1983 raised serious concerns about possible "secondary gain" motivation, especially in light of his reports in March 1997 that his family was being forced to dismantle their cabin and vacate the BLM land they resided on.  In the June 22, 2000 opinion denying his application

12- OPINION AND ORDER

the ALJ found that Bosch's addition of "depression" to his list of allegedly disabling conditions was not supported by a single medical record evincing complaints or treatment for depression. Moveover, in the almost six years since his minor stroke Bosch had not sought vocational rehabilitation services or made any documented effort to reenter the work force.  In light of Bosch's medical history that shows a corresponding trend toward an increasingly unhealthy, unproductive life, these factors are convincing reasons to discredit his claims.

In summary, I find the ALJ's two main reasons for rejecting Bosch's testimony – the lack of objective medical evidence and a host of evidence suggesting that he had a disability conviction – are clear and convincing reasons to discredit his claim of being unable to work due to a medically determinable impairment that was expected to last 12 months[5].

---

[5] See 20 C.F.R. § 416.905(a)(defining disability as "an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.")

13- OPINION AND ORDER

**II. The ALJ's Evaluation of Jeanette Bosch's Lay Witness Testimony Was Based on Substantial Evidence.**

According to Ms. Bosch, the ALJ failed to provide legally sufficient reasons for rejecting her statement that Bosch was so fatigued he had to nap several hours each day.

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)(finding the ALJ erred by failing to account for lay witness testimony about a claimant's serious coughing problems); *see also Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). However, medical diagnoses, such as that the claimant has a serious mental impairment as the result of a stroke, are beyond the competence of lay witnesses and therefore they do not constitute competent evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984); *cf. Nguyen*, 100 F.3d at 1467 (distinguishing lay witness testimony about a claimant's symptoms from testimony involving medical conclusions or diagnoses). The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide germane reasons for doing so. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

In this case, Ms. Bosch's testimony that Bosch napped all day because he was severely fatigued arguably is not even

14- OPINION AND ORDER

competent lay witness testimony. Ms. Bosch does not have the expertise to speak to the reason Bosch may, indeed, have been napping all day. In any event, contrary to her contention, the ALJ did provide a germane reason for rejecting this statement. Namely, the ALJ found it was inconsistent with the objective medical evidence showing that Bosch had a greater functional capacity than Ms. Bosch claimed. Finding substantial evidence to support this conclusion I affirm the ALJ's analysis of the lay witness testimony.

### III. Substantial Evidence Supports the ALJ's Evaluation of Dr. Kevin Sullivan's Opinion.

Neurologist Kevin Sullivan, M.D., performed a neurological evaluation of Bosch on March 27, 1997, at the request of Bosch's treating physician, David Candelaria, M.D. Dr. Sullivan assessed Bosch was the following impairments: "Status Post Wallenberg's syndrome" with "residual right Horner's syndrome and crossed sensory impairment"; "Possible mild carpal tunnel syndrome bilaterally"; "Exogenous obesity"; and "Severe hypertension." Still, Dr. Sullivan concluded that Bosch remained capable of working. Dr. Sullivan opined that Bosch's ability to lift and carry were not limited, and that he could stand four hours in an eight-hour day, walk four hours in an eight-hour day, and sit eight hours uninterrupted. Due to Bosch's obesity and mild left

15- OPINION AND ORDER

leg ataxia Dr. Sullivan concluded that Bosch should not climb, kneel, balance, crouch or crawl, but that he could stoop occasionally.  Dr. Sullivan also opined that Bosch should not work at heights or around machinery due to his obesity and limp. Finally, although he did not assess any restrictions with reaching, handling, feeling, or pushing/pulling, Dr. Sullivan noted that "repetitive hand activity may cause pain/paresthesias."

The ALJ thoroughly discussed Dr. Sullivan's assessment, and stated that he accepted these limitations even though they were more restrictive than Dr. Yung Kho's 1995 opinion that Bosch could perform a relatively full-range of medium work.  Since neither Dr. Sullivan nor Dr. Kho assessed limitations related to the use of Bosch's hands, the ALJ did not ask the vocational expert to consider any.  The vocational expert testified that at the very least a hypothetical worker with the restrictions assessed by Dr. Sullivan could perform the jobs of rental clerk of a storage facility and ticket seller.

Jeanette Bosch claims the ALJ wrongly rejected Dr. Sullivan's opinion that repeated use of Bosch's hands could cause him pain and parasthesias.  However, as I have noted, the ALJ plainly acknowledged this note, but credited Dr. Sullivan's assessment that notwithstanding this possibility, the use of

16- OPINION AND ORDER

Bosch's hands were not affected by his impairment.  Thus, I do not find any merit to Jeanette Bosch's argument.  Rather, I find the ALJ did not reject Dr. Sullivan's opinion.

### CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this _8_ day of January, 2008.

                                                                         /S/ Malcolm F. Marsh
Malcolm F. Marsh
United States District Judge